UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Norman A. Michaud,

      Plaintiff,

      v.                                                                  Civil Action No. 1:13-cv-203

Commissioner of Social Security,

      Defendant.

## REPORT AND RECOMMENDATION
(Docs. 8, 9)

Plaintiff Norman Michaud brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits. Pending before the Court are Michaud's motion to reverse the Commissioner's decision (Doc. 8), and the Commissioner's motion to affirm the same (Doc. 9). For the reasons stated below, I recommend that Michaud's motion be GRANTED, in part; the Commissioner's motion be DENIED; and the matter be REMANDED for further proceedings and a new decision.

## Background

Michaud was 50 years old on the alleged disability onset date of November 7, 2008. He has a tenth-grade education, and experience doing carpentry work and driving delivery trucks. He is married and has an adult daughter. He lives with his wife.

Michaud has numerous impairments, including injuries to his right leg, left shoulder, and left hand.  Michaud's physical impairments date back to 1989, when he was in a serious automobile accident resulting in head injury, loss of consciousness, and right leg pain.  In 2005, Michaud injured his left shoulder in another motor vehicle accident, leading to shoulder surgeries in 2005 and 2006.  In 2010, Michaud sustained traumatic injuries to his left hand while repairing a snow blower.  Finally, in 2011, because of his history of chest pain and shortness of breath as well as multiple cardiac risk factors including tobacco use and a family history of coronary artery disease, Michaud underwent coronary angiography with stenting.

Michaud also suffers from depression and borderline intellectual functioning.  He testified at the administrative hearing that he has been depressed since 2008 because he cannot work or do things he should be able to do around the house.  Michaud was often teary and dramatic in his expressions of pain at medical visits during the alleged disability period.  The record documents that Michaud walks with an abnormal gait, his right foot intermittently kicking out to the side, and that he sometimes loses control of his leg and has pain if he walks or stands for a prolonged period time.  (AR 359.)  Michaud's daughter testified at the administrative hearing that she does not feel comfortable letting Michaud hold her infant son because Michaud's leg is "very unpredictable" and may "go out" at any time.  (AR 83.)

In February 2010, Michaud protectively filed an application for social security disability insurance benefits, alleging that he stopped working on November 7, 2008 because it was too painful to work with his hand, shoulder, and leg injuries.  (AR 167.)  Michaud's application was denied initially and upon reconsideration, and he timely requested an administrative hearing.  The hearing was held in October 2011 by Administrative Law Judge

2

("ALJ") Paul Martin.  Michaud appeared and testified, and was represented by counsel.  A vocational expert ("VE") and Michaud's daughter, Katrina Murray Clark, also appeared and testified at the hearing.  Soon after the hearing, the ALJ issued a decision finding that Michaud was not disabled from his alleged onset date through the date of the decision.  (AR 10–20.)  Thereafter, the Appeals Council denied Michaud's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (AR 1–3.)  Having exhausted his administrative remedies, Michaud filed the Complaint in this action on July 19, 2013.  (Doc. 3.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380–81 (2d Cir. 2004).  The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether that impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  The claimant is presumptively disabled if his or her impairment meets or equals a listed impairment.  *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), which means the most the claimant can still do despite his or her mental and physical limitations based on all the relevant medical and

3

other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

Employing this sequential analysis, ALJ Martin first determined that, although Michaud had worked after the alleged disability onset date, that work amounted to unsuccessful work attempts, and thus Michaud had not engaged in substantial gainful activity during the alleged disability period. (AR 12.) At step two, the ALJ found that Michaud had the following severe impairments: hemiparesis[1] with hyper[re]flexia[2], chronic obstructive pulmonary disease and coronary artery disease with sinus bradycardia, left hand injury, left shoulder injury, depression, and borderline intellectual functioning with possible traumatic brain injury. (*Id.*) At step three, the ALJ found that none of Michaud's impairments, alone or in combination, met or medically equaled a listed impairment. (AR 13–15.) Next, the

---

[1] "Hemiparesis" is "[w]eakness affecting one side of the body." *Stedman's Medical Dictionary* 866 (28th ed. 2006). In Michaud, the weakness was on his right side due to his leg impairment.

[2] "Hyperreflexia" is "[e]xaggeration of the deep tendon reflexes." *Stedman's Medical Dictionary* 926 (28th ed. 2006).

4

ALJ determined that Michaud had the RFC to perform "light work," as defined in 20 C.F.R. § 404.1567(b), with the following exceptions:

> [Michaud] can occasionally climb ramps and stairs, but cannot climb ropes or scaffolds.  He can occasionally perform all other postural activities.  [He] must avoid concentrated exposure to respiratory irritants such as fumes, dust, and gases.  He must avoid concentrated exposure to poorly ventilated areas.  He can frequently, but not constantly, reach overhead, particularly with the left shoulder.  [He] can stand or walk up to one-third of the workday, and can sit for the remainder of the day.  He can understand, remember, and carry out one[-]to[-]three-step tasks, and can sustain concentration[,] persistence[,] and pace for two-hour blocks of time.  [He] should avoid regular contact with the general public, but can interact on a superficial and occasional basis.  He can interact with coworkers, but not in an intensive manner or close team environment.  He has no difficulty dealing with supervision, and is able to adapt to and manage routine tasks.

(AR 15.)  Given this RFC, the ALJ found that Michaud was unable to perform his past relevant work as a dump-truck driver and a delivery driver.  (AR 18.)  Based on testimony from the VE, however, the ALJ determined that Michaud could perform other jobs existing in significant numbers in the national economy, including the following "light" jobs: collator, price marker, and production marker.  (AR 19.)  The ALJ concluded that Michaud had not been under a disability from the alleged disability onset date of November 7, 2008 through the date of the decision.  (AR 20.)

## **Standard of Review**

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  A person will be found disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age,

5

education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In considering a Commissioner's disability decision, the court "review[s] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). The court's factual review of the Commissioner's decision is thus limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the fact[-]finder."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should bear in mind that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

Michaud argues that the ALJ's RFC determination is not supported by substantial evidence and does not adequately account for Michaud's handling and fingering limitations, left shoulder pain, and mental impairments. The Commissioner disagrees, asserting that the RFC determination is supported by the record as well as the ALJ's proper credibility assessment. The parties also dispute whether the ALJ's reliance on the VE's testimony at step five was proper.

As discussed above, after the third step of the sequential evaluation, the ALJ must determine the claimant's RFC, which the regulations define as "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). A claimant's RFC is an "administrative finding[] that [is] dispositive of a case," and not a "medical issue[] regarding the nature and severity of [the claimant's] impairment[s]." SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996) (citing 20 C.F.R. § 404.1527(e)). Therefore, in determining a claimant's RFC, the ALJ considers not only the medical opinions, but "*all* relevant evidence." *Schacht v. Barnhart*, No. 3:02 CV 1483(DJS)(TPS), 2004 WL 2915310, at *12 (D. Conn. Dec. 17, 2004) (citing 20 C.F.R. §§ 404.1545–404.1546).

In this case, the ALJ determined that Michaud could perform light work, and could frequently but not constantly reach overhead, particularly with his left shoulder. (AR 15.) The ALJ further determined that Michaud could stand or walk for up to one-third of the workday, and could sit for the remainder of the day. (*Id.*) Finally, the ALJ determined that Michaud could perform one-to-three-step tasks for two-hour blocks of time in an eight-hour workday. (*Id.*) For the reasons explained below, I find that the ALJ's RFC determination is not supported by substantial evidence.

I.  **Physical RFC Determination**

   A.  **Handling and Fingering Limitation**

The ALJ's RFC determination does not include a handling or fingering limitation. As noted earlier, in January 2010, Michaud suffered a severe hand injury when he fell while repairing a snow blower. (AR 337–38.) As he put his hands out to brace his fall, his left hand went into the chute of the snow blower. (*Id.*) He was taken to the emergency room, and x-rays revealed severe injuries to his ring and long fingers, to the point of

7

"near[]amputation." (AR 338.) Urgent surgery was performed by treating orthopedic surgeon Dr. Eric Benz.[3] (AR 337–38.) Despite an infection and other issues, by May 2010, Michaud had significant improvement and was using his hand more regularly. (AR 333–34, 359.) Still, Michaud told Dr. Benz in May 2010 that he had pain with gripping and testified at the administrative hearing that his left hand is weak; his finger hurts if touched in a certain way; and he is unable to lift a gallon of milk without dropping it. (AR 45, 64, 359.) Michaud's daughter testified that she observed Michaud having difficulty using his left hand, including being unable to hold a gallon of milk without using both hands, having trouble opening pickle jars, and being unable to pinch small objects. (AR 82–83.)

I find that the ALJ erred in failing to incorporate Michaud's severe hand impairment in his RFC determination, especially considering that the ALJ himself listed this impairment as "severe" at step two. (AR 12.) In concluding that Michaud's hand injury was a severe impairment, the ALJ also concluded that the impairment affected Michaud's ability to perform work-related activities. *See* 20 C.F.R. § 404.1521(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Yet the ALJ did not incorporate any limitations stemming from this impairment into his RFC determination. (AR 15.) This failure necessitates remand because the VE testified that all three of the jobs which Michaud could perform and which exist in significant numbers in the national economy require frequent handling and fingering with both hands. (AR 73–74, 76.)

---

[3] The ALJ incorrectly referred to Dr. Benz as a "consultative examiner" (AR 18), and the Commissioner incorrectly stated that Dr. Benz was Michaud's "primary care physician" (Doc. 9 at 5). Dr. Benz was in fact Michaud's treating orthopedic surgeon, treating Michaud's left hand injury and right leg. The errors of the ALJ and the Commissioner are harmless.

8

The Commissioner argues that the ALJ's decision not to include any manipulative limitations in the RFC determination is supported by Dr. Andres Roomet's finding of "some calluses and some discoloration from work on [Michaud's] left hand." (AR 416.) Dr. Roomet was hired, however, by Vermont Disability Determination Services to perform an independent neurological evaluation on Michaud, not to evaluate Michaud's hand impairment and limitations. (AR 415.) Moreover, Dr. Roomet acknowledged a hand impairment, stating: "[Michaud's] overall functional status was probably no worse *except for some arthritic pain in his left hand status post injury*." (AR 416 (emphasis added).)

B.   **Lifting and Carrying Limitation**

The ALJ's RFC determination also fails to accurately account for Michaud's lifting and carrying limitations due to the combination of his left shoulder and left hand impairments. The ALJ determined that Michaud had the RFC for light work, which includes "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," 20 C.F.R. § 404.1567(b), and for "frequent[], but not constant[]" overhead reaching, particularly with the left shoulder (AR 15).

In November 2006, approximately two years before the alleged disability onset date, worker's compensation doctor John Johansson, D.O., released Michaud to return to work as a truck driver but with the following limitations: only occasional lifting of no more than 10 pounds, no over-the-shoulder lifting or repetitive activities with the left arm, no reaching above the shoulders with the left arm, and only occasional reaching above the shoulders with the right arm. (AR 324.) In a follow-up report, Dr. Johansson stated that Michaud had improved his functioning and range of motion, and had accepted that he would have to "live with" his chronic shoulder pain rather than try to fix it. (AR 323.) Since that date, objective

9

medical evidence reveals that Michaud's shoulder impairment worsened. An April 2010 x-ray of the shoulder showed "[h]ypertrophic AC arthropathy" and "joint space narrowing with some articular irregularity at the glenhumeral joint," which were not seen in an x-ray from years earlier. (*Compare* AR 266 *with* AR 356.) A November 2010 examination revealed "decreased internal rotation" of the left shoulder and recorded Michaud's complaints of chronic shoulder pain. (AR 424.)

As stated above, at the administrative hearing, Michaud and his daughter each testified that Michaud was unable to lift a gallon of milk, which weighs less than 10 pounds, without using both hands; and Michaud's daughter testified that she did not trust Michaud to safely carry her infant son. (AR 45, 78, 83–84.) Michaud's limited ability to lift corresponds with a sedentary, rather than light, RFC, as sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1467(a).

### C. Credibility Assessment

The Commissioner asserts that Michaud's argument fails because it primarily relies on Michaud's own testimony, which the ALJ found was not entirely credible. The ALJ's assessment of Michaud's credibility is largely based on his findings that (a) multiple medical examiners described Michaud as malingering and exaggerating his symptoms (AR 16–17); and (b) Michaud was able to engage in "extensive activities of daily living" (AR 18). An ALJ is entitled to view with skepticism the testimony of an applicant who has been deceptive, *Hill v. Astrue*, 295 F. App'x 77, 81 (7th Cir. 2008), and there is ample evidence that Michaud exaggerated his symptoms to medical providers (*see, e.g.*, AR 190, 251, 259, 332, 359, 369, 373, 396, 425). But there is also objective evidence supporting Michaud's

10

complaints of pain and limitation due to his hand, shoulder, and leg impairments (*see, e.g.*, AR 337–38, 356, 359, 416, 424), and the ALJ himself found these impairments to be severe (AR 12).  Moreover, as discussed in detail below, Dr. Shirley Oxidine, the only psychologist to examine Michaud, diagnosed Michaud with major depressive disorder and borderline intellectual functioning, in spite of her diagnosis of malingering.  (AR 373.)

Furthermore, the ALJ's depiction of Michaud's daily activities is not reflected in the record.  The ALJ states that Michaud "was able to fish . . . and . . . goes hunting every chance he gets."  (AR 17.)  But Michaud's testimony reveals that his performance of these activities was sporadic and limited, and there is no evidence to the contrary.  Specifically, Michaud testified that, his most recent "hunting" excursion consisted of "rid[ing] the roads" in a truck with friends or relatives until they saw a deer, running about 50 feet toward the deer (falling multiple times along the way), unsuccessfully trying to help his hunting companions load the deer onto the truck, watching his companions gut the deer, and working with his companions to butcher the deer.  (AR 49–55.)  Regarding fishing, Michaud testified that he cannot go out by himself; he cannot load and unload the boat by himself; he does not hold a fishing pole; and he sometimes needs someone else to reel in the fish he catches.  (AR 51, 55–57.)  These limited activities do not demonstrate an ability to perform significant work activity.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) ("a claimant need not be an invalid to be found disabled") (internal quotation marks omitted).  The ALJ also states in his decision that Michaud is able to "prepare simple meals, perform house and yard work, [and] shop in stores."  (AR 14.)  In his Function Report, however, Michaud states that he prepares simple meals "not very often[,] only when I have to," and the only household chore he states he does is laundry "sometimes" but he "ha[s] a hard time hanging [the clothes] up."  (AR 184.)

Substantial evidence does not support the ALJ's finding that Michaud engaged in "extensive activities of daily living" (AR 18) during the alleged disability period.

For these reasons, I find that the ALJ's physical RFC determination is not supported by substantial evidence, and thus the matter should be remanded for further proceedings and a new decision.

## II.     Mental RFC Determination

On remand, the ALJ should also reconsider Michaud's mental RFC, especially in light of the July 2010 Disability Assessment of consulting psychologist Dr. Oxidine. Citing to Dr. Oxidine's report, the ALJ states that Michaud's intellectual testing revealed "no cognitive impairment." (AR 17.) But the report suggests more severe mental limitations than those included in the ALJ's RFC determination. As acknowledged by the ALJ (*id.*), Dr. Oxidine's report includes diagnoses of borderline intellectual functioning, as well as major depressive disorder, single episode, severe with psychotic features (AR 373). Although Dr. Oxidine felt that Michaud "over-state[d] events" (AR 369) and "tended to exaggerate" (AR 373), she nonetheless found that Michaud's "social judgment seemed limited" (AR 371) and his "daily activities appeared to be restricted due to his reported limited interests, his memory and concentration problems, his ideas of reference, and his persecutory delusions" (AR 373). Dr. Oxidine described Michaud as being "inappropriately friendly" (AR 370) during the examination, exhibiting "unusual mannerisms and abnormal motor activity" and an "affect [which] seemed incongruent with the situation" at times (AR 371), demonstrating "slightly illogical" thought processes (*id.*), and "appear[ing] tearful throughout the majority of the interview" (*id.*). In summary, Dr. Oxidine stated that Michaud exhibited "illogical thought processes, deficits in executive functioning, limited intellectual functioning, and over-valued

12

ideas." (AR 372–73.) Dr. Oxidine assigned a Global Assessment of Functioning ("GAF")[4] score of 38 to Michaud (AR 373), placing him in the "31–40" category, which indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Am. Psychiatric Ass'n, *DSM-IV*, at 32.

Although Dr. Oxidine was the only psychologist to examine Michaud, the ALJ's decision does not indicate what weight he afforded to her report, instead merely acknowledging her diagnoses (AR 17) and stating that she "listed malingering as a rule out diagnosis after noting that [Michaud] tended to exaggerate his symptoms" (AR 16 (citing AR 373)). While, as discussed above, the record does in fact indicate that Michaud exaggerates his symptoms and is a questionable historian, the record also indicates that Michaud has significant limitations as a result of his severe physical and mental impairments. The ALJ's determination that Michaud had no handling and fingering limitations; could lift and carry 10 pounds frequently and 20 pounds occasionally; and could perform three-step tasks for two-hour blocks of time throughout an eight-hour workday, is not supported by substantial evidence.

## III. Reliance on VE Testimony

Given the above finding, the Court need not address Michaud's arguments regarding the VE's testimony at the October 2011 administrative hearing. On remand, the ALJ should

---

[4] "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler v. Astrue*, 546 F.3d at 262 n.1 (2d Cir. 2008) (quoting Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV")*, at 32 (4th ed. 2000)).

make a new RFC determination and pose new hypothetical questions to the VE based on that determination.

## Conclusion

For these reasons, I recommend that Michaud's motion (Doc. 8) be GRANTED, in part; the Commissioner's motion (Doc. 9) be DENIED; and the matter be REMANDED for further proceedings and a new decision in accordance with this ruling.  Michaud requests that, instead of remanding for further proceedings, the Court should reverse and remand solely for a calculation of benefits.  But in cases like this where there are gaps in the administrative record or the ALJ has applied an improper legal standard, it is more appropriate to remand for further proceedings and a new decision.  *Rosa v. Callahan*, 168 F.3d 72, 82–83 (2d Cir. 1999); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Thus, Michaud's request that the matter be reversed and remanded solely for a calculation of benefits is DENIED.

Dated at Burlington, in the District of Vermont, this 20th day of March, 2014.

/s/ John M. Conroy              
John M. Conroy  
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision."  *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).